[Sac. No. 686.   Department Two.—November 9, 1900.]

AMERICAN TYPE FOUNDERS' COMPANY, Respondent, v. GEORGE F. PACKER, Appellant.

| 130 | 459 |
|-----|-----|
| 134 | 87 |
| 130 | 459 |
| 136 | 561 |
| 130 | 459 |
| 137 | 398 |
| 130 | 459 |
| 138 | 521 |
| 138 | 675 |
| 130 | 459 |
| e139 | 313 |
| 139 | 391 |
| 130 | 459 |
| 140 | 213 |
| 141 | 68 |
| 141 | 168 |
| 141 | 192 |
| 130 | 459 |
| 142 | 387 |

NEW TRIAL—SPECIFICATIONS IN STATEMENT—INSUFFICIENCY OF EVIDENCE—OBJECT OF STATUTE.—The object of the statute] relating to specifications of the insufficiency of the evidence in a statement on motion for a new trial is for the benefit of the opposing party and to abbreviate the statement. The specifications are sufficient if they enable opposing counsel to determine what evidence should be put in the statement, and enable the judge to strike out redundant and useless matter. The statute is primarily for the trial court, which is better able than the appellate court to determine whether the specifications are sufficient.

ID.—CONSTRUCTION OF SPECIFICATIONS — PLEADING—NOTICE.—The specifications are not to be deemed in the nature of a pleading, which is to be construed most strictly against the pleader, but in the nature of a notice which is to be regarded with liberality, and the sufficiency of which is to be tested by inquiring whether the other party is injured by defects.

ID.—SPECIFICATION OF PARTICULARS—ACTION OF TRIAL COURT—REVIEW UPON APPEAL.—Where there is a reasonably successful effort to state the particulars of the insufficiency of the evidence, and the specifications are such as may have been sufficient to notify counsel and the court of the grounds relied upon, and the trial court has entertained and passed upon the motion, the appel-

late court ought not to refuse to consider the case on appeal, especially if the transcript shows that all the evidence has been brought up.

CONTRACT—PERFORMANCE—LIMITATION OF TIME—DAMAGES.—A contracting party is not excused, either at law or in equity, from performing his contract within the time agreed upon. The other party may always recover any damages suffered in consequence of the failure to perform the contract within the time limited.

ID.—CONTRACT TO BUILD PUMPING PLANT—ACTION AT LAW—ERRONEOUS FINDING.—In an action at law to recover the price stipulated in a contract to build a pumping plant alleged to have been fully performed by the contractor, a finding that the time fixed in the contract for its completion was not of the essence of the contract is erroneous and has no force.

ID.—FAILURE TO COMPLETE CONTRACT AS AGREED—RIGHT OF RESCISSION DEPENDENT UPON CIRCUMSTANCES.—In certain contracts a failure to perform strictly according to contract, as to time, does not authorize the other party to rescind; but time is of importance, as a general rule, in an agreement to construct machinery or to render services. Whether the defendant has the right to rescind the contract depends upon whether the circumstances show a slight omission or imperfection, not of the substance of the contract, which might be recouped in damages, or whether there was such a material failure to complete the contract as, under the circumstances, would justify a rescission.

ID.—SUBSTANTIAL FAILURE TO PERFORM—RIGHT OF TEST AND REJECTION—RESCISSION EFFECTED.—Where it appears that there was a substantial and palpable failure to complete the contract sued upon, and to turn over to the defendant the pumping plant in a condition to be tested for thirty days, with a right of rejection thereof by the defendant, under the terms of the contract, if it was found not fulfilled (in which case the contractor was to remove it at his own expense), the service of a notice of rescission of the contract by the defendant, after the failure to perform was complete, effected a rescission, which precludes a recovery of the contract price.

ID.—FINDINGS AGAINST EVIDENCE—RESCISSION SHOWN.—The evidence reviewed, and findings that the contract was completed and that the pumping plant was turned over to the defendant to be tested under the terms of the contract, and that he failed to test it, held against the evidence; and further held that the court ought to have found from the evidence that the rescission of the contract was full and complete.

APPEAL from a judgment of the Superior Court of Colusa County and from an order denying a new trial. H. M. Albery, Judge.

The facts are stated in the opinion of the court.

U. W. Brown, John T. Harrington, Peter J. Shields, and Hiram W. Johnson, for Appellant.

Gordon & Young, and Edwin Swinford, for Respondent.

TEMPLE, J.—This action is upon a building contract entered into between plaintiff's assignor, J. Grover, and defendant, whereby Grover contracted to build for defendant a pumping plant for a stipulated price. Plaintiff avers that the contract was fully performed by Grover. Defendant denies that the plant was constructed according to the contract, or at all. Judgment was rendered for plaintiff, and defendant appeals from the judgment and from an order refusing a new trial.

Objection is made to the specifications in regard to the alleged insufficiency of the evidence to support the findings. The requirement of the statute is for the benefit of the opposing party and to abbreviate the statement. If the specification is sufficient to enable the opposing counsel to determine what evidence should be put in the statement, and the judge to strike out redundant and useless matter, it is enough. The statute in this matter is not primarily for this court, but for the trial court. That court should not hear the motion unless the statement contains such specifications. Upon that subject the trial judge, who tried the case, has a decided advantage over this court in determining whether the specifications are sufficient.

In many of the cases the specification seems to have been regarded as a pleading—as a sort of complaint in error, where all the intendments are against the pleader, and the moving party is not even allowed the benefit of the rule that errors shall be disregarded, if we can see that injury has not been done. Plainly, this is not correct. It is in the nature of a notice, the sufficiency of which should be tested by inquiring whether the opposite party is injured by defects. It is not even to be regarded with the strictness with which an error of the court must be. If error at all, it is committed by a party and in a matter in which great liberality should be exercised by courts. Whenever there is a reasonably successful effort to state "the particulars," and they are such as may have been

sufficient to inform the opposing counsel and the court of the grounds, and the trial court has entertained and passed upon the motion, in my opinion this court ought not to refuse to consider the case on appeal, and especially where, as in this case, the transcript shows that all the evidence has been brought up.

The defense attempted is that the contract was not performed by plaintiff's assignor: 1. That the plant was not completed within the time agreed upon; and 2. That in many important and material respects it has never been completed.

Defendant also pleads a rescission, because of the failure of plaintiff's assignor to perform his contract.

As to the first point, the court finds that the defendant, by his acts and conduct, waived the performance within the agreed period of ninety days, and there is some evidence to sustain the finding. The evidence, however, upon this point is very close, and the court may have been influenced by its views as expressed in a further finding, that the plant was designed to pump water for irrigation, and it was agreed that it should be completed and in running order in not to exceed ninety days from the date of the contract, April 1, 1897, but the time "was not fixed and agreed upon between said parties and inserted in said contract for the express purpose of having said plant in position and completed so as to pump water and furnish water for the purpose of irrigation during the summer and irrigation season of 1897, and in that regard time was not of the essence of the contract."

A new trial is necessary on other grounds, and, therefore, it is proper to say that this finding is plainly erroneous as matter of law. Neither at law nor in equity is a contracting party excused from performing his contract within the time agreed upon, further than that in certain contracts failure to perform strictly according to contract, as to time, does not authorize the other party to rescind. He may always, however, recover any damage he has suffered in consequence of such failure. In equity, in actions for specific performance, the court may in its decree provide such compensation. The statement that time is not of the essence of the contract is misleading in any case, and has no force whatever in an action at law. In such cases, to enable one to rescind for a breach on the part of the other party, the failure must be as to a material matter. "If the

omission or imperfection is so slight that it cannot be regarded as an integral or substantial part of the original contract, and the other party can be compensated therefor by a recoupment for damages, the contractor does not lose his right of action." (*Harlan v. Stufflebeem*, 87 Cal. 508.)   Whether the failure to complete the plant in time was sufficiently material to justify a rescission depended upon the circumstances of the case.   Cases in equity in which this rule is applied are usually for the specific performance of contracts for the purchase of land.   Often the failure is merely to pay at a specified date.   A slight delay in such a case is usually of no great importance, and the detriment is easily compensated by interest.   An agreement to construct machinery or to render services is quite different.   There, as a general rule, time is of importance.

I think it quite clear that the finding to the effect that plaintiff's assignor furnished and installed the pumping plant according to his contract, disregarding the question of time, is wholly unsupported by the evidence.

The important portions of the contract are, in substance, as follows: Grover agreed to furnish a pumping plant, installed on the property of defendant, "guaranteed to perform the following service and to consist of the following parts: The plant shall consist of one Hercules gasoline and distillate engine of eighty horse-power, set in position and connected by means of belting to one twelve-inch San Francisco Tool Company's centrifugal pump, with all necessary pipe for suction and discharge, and such minor details as will be necessary to complete the plant; the same to have a guaranteed capacity of six thousand (6,000) gallons per minute, under a service of twenty-seven (27) feet," etc.

This was the main pump for irrigation, and, in addition, there was to be a pump with a capacity of from three hundred to four hundred gallons per minute connected with the same engine.   Then follows an enumeration of the fittings.   Grover was to pay all steamer freight and to furnish cement.   Packer was to do all necessary hauling, furnish gravel for cement, and make excavations.

It was further agreed that after the plant was completed and turned over to Packer he should have thirty days to operate

and test said plant, "and thereby ascertain whether or not the contract has been filled, as above specified." If the test proved that the contract had been fulfilled, Packer must pay the contract price. "If, however, at the expiration of thirty days, it is found that the contract has not been fulfilled, then at the option of said George F. Packer the plant can be ordered removed from his property, and said removal made at the expense of said J. Grover." Grover also warranted the engine for one year against breakage caused by flaws in material or faulty construction.

The court found that the pumping plant was completed on July 14th, and was turned over to the defendant July 17th, in order that defendant could operate and test the plant under the terms of the contract, but defendant failed so to do.

As I read the statement there was no evidence whatever tending in the slightest degree to support this conclusion, except some opinions of the employees who constructed the plant, as to its completion according to specifications, but the uncontradicted evidence shows, in the clearest possible way, that the plant was not completed on the 17th of July, and was not then, and has never been, turned over to Packer to enable him to make the test, and if it had been so turned over the evidence of plaintiff's witnesses without conflict demonstrated that the test could not have been made.

The finding, of course, means that the plant was finished so that Packer could subject it to the thirty-day test provided for in the contract. There is no finding to the effect that the plant was found sufficient upon the test agreed upon, but, in lieu of such finding, the court concluded that defendant, without justification, refused to make the test.

The contract specifies certain parts of the plant to be supplied, but not necessarily all. Grover was to install a pumping plant guaranteed to have a certain efficiency, and agreed besides the enumeration to furnish "all necessary pipe for suction and discharge, and such minor details as will be necessary to complete the plant; the same to have a guaranteed capacity," etc. All that Packer was to do in the constructing of the plant is also specified.

Mr. Doak superintended the construction of the plant, and was the chief witness for plaintiff. He testified that the plant

was completed on the 14th of July and tested on the 17th of the same month, and "with the exception of the little circulating pump and the clutch-pulley, it was one of the nicest working plants I ever saw." These exceptions happened to be very important. After a few starts it developed that the clutch-pulley failed to be serviceable, and it was taken off by Mr. Doak, and by his direction was sent off for repairs. Of course the plant was not in a condition for the thirty-day test at that time, and whatever Mr. Doak may have said to Mr. Packer about such a test his own testimony shows that it was simply impossible. Mr. Doak returned in August and replaced the parts of the machinery he had taken away with him and ran water through the pump eight or ten times. He says they took water for the circulating pump from a large tank belonging to Mr. Packer, and this water was full of manure and straw and clogged the engine and prevented continuous working, and they were forced to stop every three or four minutes. Of course he had no right to take water from that source if it was unfit, but should have constructed a tank, if one was necessary. Mr. Grover was to construct a pumping plant with a guaranteed capacity, and to furnish necessary appliances to complete the plant, and Mr. Packer had the privilege of thirty days' test, at the expiration of which time Packer was authorized to require it to be removed at the expense of Grover if it was "found that the contract has not been fulfilled." Such a plant he, Grover, was to turn over to Mr. Packer for trial. Of course, when turned over for this trial, it was necessary that it should be in fit condition to be tried. The part to be contributed by Mr. Packer is explicitly stated in the contract, and he was not required to build any tanks or a house over the pumping plant.

Another attempt to run the machine was made in September, the clutch-pulley having been in the meantime restored. Confessedly the clutch-pulley would not work well, and it was necessary to stop the engine every few minutes to remove straw and manure from the engine.

At that time some of plaintiff's employees insisted to Mr. Packer that the plant was complete, and he said that he would give it a good trial, but before they left the employees of plaintiff removed the clutch-pulley and took it to the city for repairs, and have never replaced it or attempted to do so.

Two excuses for this palpable failure to perform his contract on the part of Mr. Grover are attempted: First, it is said the machine could have been worked without a clutch-pulley. This is undoubtedly true. The first plan for this plant was to use a belt-tightener instead, and quite probably the great mistake made by Mr. Grover was in changing that plan. The function of the clutch-pulley was to enable the gearing which moved the large pump to be thrown in and out of gear. Other contrivances are mentioned by means of which this same thing could be done, but none of them were made parts of this plant. The means provided here was the clutch-pulley, and, confessedly, it would not work, and Mr. Packer was never afforded an opportunity to make the stipulated trial of the plant; and there is no evidence whatever tending to show that he was afforded such opportunity. The second excuse is that the clutch-pulley was injured by sand and grit and should have been protected by a house built over it. Mr. Packer has never contended that Mr. Grover should have built such a house, but if it was so essential to the working of the plant, his contract bound him to build it. Mr. Packer was asked to build it, and replied that he did not wish to incur that expense until he knew that the plant would work. This certainly was his privilege under the contract. I repeat, the mistake probably was in employing a clutch-pulley at all, but Mr. Packer is not responsible for this change. It was not made at his request nor with his concurrence.

On the 27th of August, 1897, Mr. Packer notified Mr. Grover that the plant had not been completed at the time agreed upon, and he therefore rescinded the contract. Possibly, in view of the finding that defendant had by his acts waived performance within the stipulated period, this notice was premature.

On the 9th of September, which was after the plaintiff's employees had again attempted to run the plant and again had removed an essential part of the machinery, Packer again notified Mr. Grover that the plant had not been finished and put in running order, and that he rescinded the contract and requested the removal of the plant from his premises. And again, on the eleventh day of October, 1897, having been notified of the assignment by Grover of his claim to plaintiff, Mr. Packer served a similar notice both upon Mr. Grover and upon plaintiff.

Surely at the time the last notice was served the failure on the part of Mr. Grover was complete. He had not constructed a serviceable pumping plant and had then shown by his conduct that he did not intend to make any further effort in that direction. From the evidence the rescission was complete and perfect, and the court should have so found.

The judgment is reversed and the cause remanded for a new trial.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.